**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **2:14-cr-30** |
| **v.** | ) | |
| | ) | |
| **CARLTON WILLIAMS,** | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently pending before the Court are numerous pretrial motions. The following motions were filed pro se by Defendant Carlton Williams: MOTION FOR FURTHER RULE 16 DISCLOSURE/ BRADY v. MARYLAND MATERIAL (ECF No. 29); MOTION FOR SUPPRESSION OF EVIDENCE (ECF No. 30), with attached exhibits; and MOTION REQUESTING RELIEF FROM INEFFECTIVE ASSISTANCE OF COUNSEL/ REQUEST FOR COURT APPOINTMENT OF COUNSEL (ECF No. 31). The government filed a response to the pro se motions (ECF No. 36). Defense counsel, Assistant Public Defender Penn Hackney, also filed a response (ECF No. 38). Defendant Williams filed a pro se reply to the government's response (ECF No. 39).

Also pending before the Court are various motions filed by defense counsel on behalf of Williams: MOTION IN LIMINE TO COMPEL THE GOVERNMENT TO PROVIDE DEFENDANT WITH A STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE WITH CITATION TO AUTHORITY (ECF No. 37); DEFENSE COUNSEL'S MOTIONS AND RESPONSES TO MR. WILLIAMS' PRO SE MOTIONS AND TO THE GOVERNMENT'S RESPONSES THERETO (ECF No. 38); MOTION FOR DISCOVERY WITH CITATION OF AUTHORITY (ECF No. 48); MOTION TO COMPEL THE GOVERNMENT TO PROVIDE DEFENDANT WITH A STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE

WITH CITATION OF AUTHORITY (ECF No. 49); and MOTION TO SUPPRESS EVIDENCE WITH CITATION OF AUTHORITY (ECF No. 50). The government filed a response in opposition to the motions filed by defense counsel (ECF No. 52). After being granted an extension of time, counsel for Defendant filed a reply brief (ECF No. 75). After considerable development and argumentation by both sides, the motions are ripe for disposition.

Factual and Procedural History

On January 11, 2013, Defendant Williams was subjected to a traffic stop on the Pennsylvania Turnpike. Trooper Michael Volk issued a warning about speeding; told Williams he was free to go; and then sought consent to search his vehicle. Williams agreed and signed a consent to search form. Trooper Volk then searched for almost one hour and fifteen minutes before finding approximately 39 grams of heroin hidden in the front console parking brake assembly of Williams' car.

On February 11, 2014, a federal grand jury returned a one-count indictment which charged Williams with possession with intent to distribute a detectible amount of heroin. Williams pled not guilty and has been detained pending trial. Assistant Federal Public Defender Marketa Sims was initially appointed to represent Williams. On August 5, 2014, Assistant Federal Public Defender Penn Hackney entered his appearance on behalf of Williams, because Ms. Sims had relocated out of state.

Following the pro se motions of Williams, the initial motions filed by attorney Hackney, and the government's responses thereto, the Court held a status conference on November 6, 2014. The Court and the parties discussed Mr. Williams' request for a new attorney and his disagreement and frustration with the prediction that he may well be classified as a career

offender and may also be subjected to enhanced penalties due to a § 851 Information regarding a prior felony drug conviction.[1] Mr. Hackney remains counsel of record, he has been competently and professionally representing the interests of Defendant, and there is no legitimate or justifiable reason to remove him from the case. Accordingly, Defendabt's MOTION REQUESTING RELIEF FROM INEFFECTIVE ASSISTANCE OF COUNSEL/ REQUEST FOR COURT APPOINTMENT OF COUNSEL (ECF No. 31) will be **DENIED**.[2]

On June 5, 2015, the Court conducted an evidentiary hearing on Williams' motion to suppress evidence. The government called only one witness, City of Pittsburgh Police Officer Eric Harpster, who had been involved in the investigation of Williams but was not present at the search scene on January 11, 2013. Accordingly, the Court continued the hearing until June 30, 2015, at which time the defense presented testimony from Trooper Volk and Mr. Williams. At the request of Defendant, the Court allowed each side to file a post-hearing brief. Defendant was also permitted to file a reply brief. Such briefing was completed on September 18, 2015. The Court turns now to the pending motions.


General Discovery Motions

Discovery in a criminal case is far different from that in a civil case. The government's obligation to make available pretrial discovery materials is generally governed by Rule 16 of the Federal Rules of Criminal Procedure. Outside of Rule 16, the Jencks Act, and *Brady v. Maryland*, 373 U.S. 83 (1963), and their progeny, however, a defendant has no general

---

[1] The Court will not make any findings on sentencing-related issues unless Defendant is convicted and such are raised during a sentencing phase.

[2] To the extent that Williams contends that his constitutional right to effective counsel has been violated, such motion is premature. If Williams is convicted, he may present such an argument in a collateral proceeding by way of a petition pursuant to 28 U.S.C. § 2255. *United States v. Jake*, 281 F.3d 123, 132 n. 7 (3d Cir. 2002).

constitutional right to pretrial discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Those rights conferred by rule, statute, and case law cannot be applied to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation. *United States v. Fiorvanti*, 412 F.2d 407, 411 (3d Cir.), cert. denied, 396 U.S. 837 (1969). The Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas listed in Federal Rule of Criminal Procedure 16(a)(1), "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994). Generally, these other areas are limited to the Jencks Act and materials available pursuant to the *Brady* doctrine. *Id*. The Court appreciates, and in some circumstances shares, Defendants' frustration with these discovery limitations.

Defendant seeks the following: (1) all information that is favorable to the defense (i.e., *Brady* material); (2) all information to which he is entitled under Rule 16(a)(1); (3) impeachment information on all witnesses against Williams; (4) impeachment/credibility information against all law enforcement officers involved in the case; (5) information on cooperation agreements; (6) transcripts of witness testimony before the grand jury; (7) a copy of the original, signed indictment; and (8) any other information which might detract from the credibility or probative value of the prosecution's case, or which might lead to such favorable evidence. Defendant acknowledges that he received initial disclosures from the government, but avers that mobile video recordings ("MVR recordings") were not included in the production.[3] Defendant also seeks disclosure of "prior bad act" and uncharged misconduct evidence pursuant to Fed. R. Crim.

---

[3] The Court notes that the MVR recording of the January 2013 incident from Trooper Volk's car was provided to Defendant and was a joint exhibit in the suppression hearing. Williams testified that he had reviewed the MVR recording.

P. 404(b) and 609 and requests a pretrial hearing regarding the admissibility of such evidence.

At the outset, the Court notes that the government has acknowledged its obligations under *Brady* and its progeny, *Giglio*, Federal Rules of Criminal Procedure 12 and 16, and the Jencks Act. The government has also made the following representations: that it has arranged for Williams to view the MVR recording; and that it will provide all *Brady/Giglio* information and Rule 404(b)/609 evidence by the date set by this Court in its pretrial scheduling order. The government objects to any efforts to expand its discovery obligation beyond that required under existing law. The government further articulates a safety concern regarding the premature disclosure of the identities of cooperating witnesses. The government objects to a pretrial hearing regarding Rule 404(b)/609 evidence, and submits that the admissibility of such evidence will require the context of a trial. The Court is confident that the government is well aware of its continuing duty to provide material to Defendants, and that it will faithfully discharge its duty without "tacking too close to the wind." *Kyles v. Whitley*, 514 U.S. 419, 439 (1995).

The Jencks Act, 18 U.S.C. § 3500, requires the government to provide the defense with statements of witnesses that the government intends to call <u>at trial</u>. The government has no duty to make an earlier disclosure. Fortunately, the government recognizes that evidence which would tend to impeach the testimony and/or the credibility of a witness must be turned over in advance so that defense counsel is able to effectively cross-examine that witness and that strict compliance with the Jencks and *Brady* time limits could result in delay(s) during the trial. Thus, the government has represented that impeachment materials relating to its trial witnesses will be provided prior to trial in accordance with the Court's scheduling order. The Court will set a case management deadline for the government to provide Jencks and *Brady* materials at least fourteen (14) days prior to trial.

The Court will also set a case management deadline for the government to provide Rule 404(b)/609 materials at least fourteen (14) days prior to trial. The Court notes that Defendant has already received a copy of his criminal record. However, to the extent that Defendant seeks to exclude Rule 404(b)/609 evidence in advance of trial, such motion is premature. The Court agrees with the government that rulings on admissibility of evidence must await the further development of the record at trial. A pretrial hearing is not warranted on this issue.

The remainder of the information sought by Defendant exceeds the obligation of the government and therefore will not be ordered. In particular, Defendant has not established a "particularized need" for the grand jury transcripts or identities of the grand jurors. *United States v. Richards*, 925 F. Supp. 1097, 1108-09 (D.N.J. 1996) (to overcome strong public interest in secrecy of grand jury, moving party has high burden to show "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for secrecy, and that their request is structured to cover only the material so needed." ) (citations omitted); Fed. R. Crim. P. 6(e).

In accordance with the foregoing, the MOTION FOR FURTHER RULE 16 DISCLOSURE/ BRADY v. MARYLAND MATERIAL (ECF No. 29); MOTION IN LIMINE TO COMPEL THE GOVERNMENT TO PROVIDE DEFENDANT WITH A STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE WITH CITATION TO AUTHORITY (ECF No. 37); DEFENSE COUNSEL'S MOTIONS AND RESPONSES TO MR. WILLIAMS' PRO SE MOTIONS AND TO THE GOVERNMENT'S RESPONSES THERETO (ECF No. 38); MOTION FOR DISCOVERY WITH CITATION OF AUTHORITY (ECF No. 48); and MOTION TO COMPEL THE GOVERNMENT TO PROVIDE DEFENDANT WITH A

STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE WITH CITATION OF AUTHORITY (ECF No. 49) will be **DENIED**, without prejudice to reassert in the event of a specific breach of the government's disclosure obligations.

Motion to Suppress Evidence

Defendant requests that the Court suppress: (1) the heroin found during the search of Williams' vehicle on January 11, 2013; and (2) any subsequent incriminating statements he made to DEA agents at the Pennsylvania State Police Beaver Barracks later that evening following his arrest. Defendant advances several legal arguments. Primarily, he contends that because the search of his car took so long, it became unreasonable. Defendant argues that the search exceeded the scope of his consent; that he revoked and/or was denied his right to revoke his initial consent to search; and that he was illegally detained on the side of the turnpike, thus rendering any continuing consent involuntary. Defendant also objects to the warrantless search of his cell phones during the incident. Defendant contends that his subsequent statements should be suppressed as fruit of the poisonous tree.

The government contends that the suppression motion should be denied. The government argues that Williams gave a broad, written consent and never effectively revoked that consent. In the alternative, the government contends that it had probable cause to search the car even without Defendant's consent and/or that the search was incident to a lawful arrest. Finally, the government contends that the search of Williams' cell phones was permissible under the law at the time of the incident in January 2013.

1. <u>Factual Background</u>

As an initial matter, it is important to recognize that the January 2013 incident was not a random traffic stop. Defendant Carlton Williams had been the subject of an ongoing narcotics investigation led by Eric Harpster, a City of Pittsburgh Police detective assigned to a federal Drug Enforcement Administration task force. As detective Harpster testified, agents had developed substantial information that Williams was engaged in heroin trafficking. On November 14, 2012, a cooperating source ordered and bought three bricks of heroin from Williams. At a second controlled purchase, on December 3, 2012, Williams informed the cooperating source that he had not had time to prepare the full amount of heroin requested. Nonetheless, the cooperating source bought the three bricks of herion that Williams had been able to process. Both of these transactions took place in Williams' white Lincoln sedan – the same vehicle involved in the January 2013 traffic stop.

The bricks of heroin that had been purchased from Williams were packaged in a distinctive manner; the heroin was placed into stamp bags, which were "banded" and then "folded over" to form a brick. Detective Harpster testified that this method of packaging, along with William's inability to have the desired number of bricks ready for the second purchase and statements from the cooperating source, indicated to Harpster that Williams purchased the heroin in powder form from an out-of-state source and then packaged the heroin himself in Pittsburgh. Detective Harpster believed that the out-of-state source was in Detroit, Michigan, which is a major source-city for the heroin sold in Pittsburgh.

On December 14, 2012, government agents secured court authorization to install a tracking device on Williams' vehicle. On January 11, 2013, agents monitored the tracking device and became aware that Williams had driven from Pittsburgh to the Detroit area and then

"boomeranged" directly back to Pittsburgh the same day after a very short stop. The officers had no surveillance or other actual information about Williams' actions in Detroit that day, although they suspected that he met his source of supply and was transporting heroin back to Pittsburgh.

During Williams' return trip, Detective Harpster contacted Trooper Volk of the Pennsylvania State Police and advised him to stop the vehicle when it entered Pennsylvania.[4] Trooper Volk was based out of the Somerset barracks, but was specifically requested to drive to the Ohio border of the turnpike to interdict Williams and perform a search. Detective Harpster informed Trooper Volk that he believed the vehicle was being driven by Williams and that it very likely contained heroin. Volk remained in contact with Harpster and other law enforcement personnel throughout the incident.

Trooper Volk identified and followed William's vehicle, which was travelling east-bound on the Pennsylvania turnpike. Williams was speeding, drove erratically, and changed lanes without using a turn signal. Trooper Volk pulled Williams over to conduct a traffic stop. When asked why he was speeding, Williams claimed he was returning from Toledo and was worried he wouldn't have enough gas to reach Pittsburgh. While Trooper Volk reviewed William's license and registration, another trooper, Kevin Vresh, arrived. Trooper Jeff Brautigam later arrived on scene. Trooper Volk had Williams exit the vehicle, gave him two warnings for his traffic violations, and engaged him in cordial conversation. Williams, who did not appear to be nervous or intimidated, prolonged the encounter by asking Trooper Volk if he had enough gas to reach Pittsburgh. Trooper Volk then informed Williams he was "free to go." Before returning to his cruiser, however, Trooper Volk asked Williams whether he would consent to a search of his vehicle.

---

[4] There is no evidence as to whether agents attempted to secure an anticipatory search warrant.

It is undisputed that Williams knowingly, intelligently and voluntarily signed a written form in which he consented to a search of the vehicle, its contents and his person. Specifically, the Waiver of Rights and Consent to Search form defined the scope of the search as: a "white Lincoln sedan bearing PA registration HXM9258; the vehicle's, content(s), occupant(s), container(s), compartment(s). My person." The items to be searched for and seized if found were: "drugs, weapons, bulk US currency." The form contains, in bold print, a preprinted notice that the signatory has been told that he does not have to consent and has the right to refuse consent, but nonetheless voluntarily gives consent to conduct the search. In addition, the MVR recording captured the personal interaction in which Trooper Volk asked Williams if he had any questions and Williams responded "no." Defendant did not appear nervous or demonstrate any hesitancy in granting his consent. After Williams signed the form, Trooper Volk conducted a pat-down search of Williams and directed him to wait with Trooper Vresh while Volk searched the vehicle.

The search, in fact, spanned approximately seventy-one minutes, and extended to every part of the vehicle, including its passenger compartment, trunk, and undercarriage. Throughout the search, Trooper Volk received assistance from several officers and talked with them about the details of the search. Trooper Volk also took several short breaks to make phone calls to at least two other officers, during which he updated them on the progress of the search (or lack thereof) and requested a narcotics-detection canine.[5]

Williams, meanwhile, was behind Trooper Volk's car and thus out of the dashboard camera's field of vision and out of earshot for the majority of the search. However, throughout

---

[5] At least one of these phone calls seems to have been with Detective Harpster, who testified at the suppression hearing that he received a phone call from Trooper Volk during the search indicating "[the search] was going to take a while, he hadn't found [the heroin], and that a K-9 was on its way coming from a distance." June 5 Hearing Transcript, ECF No. 62 at 21:3-5.

the search, Williams can be heard on the MVR recording chatting with the officers in a normal voice. *Id.* Williams also asked for and received five items from his vehicle, including his jacket, a pack of cigarettes, two cell phones, and a cup of coffee. Williams was not detained, and at one point walked into view of the MVR camera. The Court finds Williams' testimony that he was "assaulted" by Trooper Jeff Brautigam during the search process, (June 30 Hearing Transcript, ECF No. 65 at 26), to be not credible. A search of Williams' person for drugs was clearly within the scope of his consent.

Williams testified that after Volk's third trip to his car, Williams got irritated and said "you searched my car three times, now you hold me up and I have to go." Williams testified that Volk ignored him and got into his patrol car. June 30 Hearing Transcript, ECF No. 65 at 15. The Court finds that this testimony is only credible to a degree. No such comments are audible on the MVR tape. Moreover, there is no evidence that Trooper Volk heard Williams' alleged comments, assuming such were made. As Williams explained on cross-examination, he used a regular tone of voice that he expected Trooper Volk to hear but he was at a distance and there was a lot of noise from the turnpike traffic and the wind. *Id.* at 22-24.

As the search progressed, however, Williams' irritation increased. When, fifty-one minutes into the search, the officers began to unscrew his after-market sound system speakers, Williams complained in a raised voice that "you need a warrant to go through my speakers." June 30 Hearing Transcript, ECF No. 65 at 18; MVR at 1:12:00. Trooper Volk told Williams to "relax," to which Williams loudly, but calmly responded: "I've been out here half an hour, man." *Id.* The Court finds that by these comments, Williams did not withdraw his consent to search the car. Instead, his objection was specifically limited to the sound system speakers. According to Williams, upon his objection Trooper Volk re-screwed the speakers back in place. *Id.* at 19.

Seventy-one (71) minutes after the search began, and ninety-two (92) minutes after Trooper Volk had pulled Williams' vehicle over, he found a package of plastic-wrapped heroin in the parking-brake cover of Defendant's vehicle. Immediately after Volk's discovery, one of the Troopers placed Williams under formal arrest.

2. <u>Scope/Length of Search</u>

When a warrantless search is authorized by voluntary consent, the scope of that search is limited to the terms of the consent. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251. *See also United States v. Gooch*, 915 F. Supp. 2d 690, 715 (W.D. Pa. 2012). The length and scope of a consent search is generally defined by the expressed object of the search. *Id*. For example, if the officer obtains consent to search for weapons, he may look anywhere a weapon may be hidden, so long as he does not cause damage. *See United States v. Garrido-Santana*, 360 F.3d 565, 576 (6th Cir. 2004) ("It was objectively reasonable for [agents] to have concluded that this general consent to search the vehicle included consent to search any container within that vehicle that might have held illegal contraband.").

In this case, there was an express, written consent.[6] Therefore, the scope of the consent search is easily determined. The signed, written consent form describes a broad, comprehensive search. The consent to search extended not only to the vehicle itself, but also to its contents, containers and compartments and to Williams' person. Trooper Volk was attempting to find a

---

[6] Thus, the United States Supreme Court's recent decision in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015) (involving a <u>non-consensual</u> search after a traffic stop), is distinguishable.

small package of heroin that was presumably hidden. The scope of his search did not exceed the scope of the consent voluntarily executed by Williams.

There was no time limit specified in the Waiver of Rights and Consent to Search document. However, after the consent form was finalized and as he commenced the search, Trooper Volk said in an off-hand way that he would "be done in a minute."[7] The Court finds that this was a mere idiomatic expression, rather than a binding representation as to the length of the search. The Court finds that it was not unreasonable for Trooper Volk to search for over an hour and that the scope of the search was within the consent granted by Williams. *United States v. Comegys*, 504 F. App'x 137, 142 (3d Cir. 2012) (non-precedential) (traffic stop and car search of more than three hours within scope of consent); *United States v. Siwek*, 453 F.3d 1079, 1084 (8th Cir. 2006) (holding forty-five minute search of truck did not exceed scope of consent when defendant did not "protest in any manner the continuation of the search"); *United States v. Rosborough*, 366 F.3d 1145, 1150-51 (10th Cir. 2004) (finding forty-five minute search did not exceed scope of consent when patrolmen "acted diligently in their search" and defendants did not object to its length until after canine unit alerted to drugs in the vehicle); *United States v. Alcantar*, 271 F.3d 731 (8th Cir. 2001) (finding first hour of nearly three-hour search of truck did not exceed scope of consent when neither defendant objected to its continuation after officer told them the search would "not take very long"). In sum, the length of the subject search was not excessive.

3. Did Williams Revoke His Consent?

The Court will now consider a dispositive issue in this case, specifically, whether Williams validly revoked his consent during the search. The law governing withdrawals of

---

[7] The Court finds that Williams' testimony that he asked how long the search would take before he gave his consent is not credible. (June 30 Hearing, ECF No. 65 at 14).

consent has not yet been conclusively resolved by the United States Supreme Court or the United States Court of Appeals for the Third Circuit. *See United States v. Pelle*, 2006 WL 436920 at * 4 (D.N.J. Feb. 17, 2006) (compiling cases examining withdrawal of consent). Indeed, in making its argument that Defendant did not ever withdraw his consent at any time, the Government relies exclusively on cases from other Courts of Appeal. *See Gov. Br.* at 4.

The "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 820 (7th Cir. 2013). The Supreme Court has explained that courts are to measure the scope of a suspect's consent using an objective standard to determine what a reasonable person would have understood from the exchange between the officer and the defendant. *Jimeno*, 500 U.S. at 251. Thus, courts should examine, based on the totality of the circumstances, whether an individual's purported revocation of his/her consent was objectively reasonable. Withdrawal of consent is a factual determination based on the totality of the circumstances and is subject to review for clear error. *See $304,980.00 in US Currency*, 732 F.3d at 820; *Siwek*, 453 F.3d at 1085-86; *United States v. Maldonado*, 38 F.3d 936, 942 (7th Cir. 1994). Courts have recognized that the effort to determine whether an individual has withdrawn his/her consent is not subject to bright-line rules nor is a person required to recite "magic words." *United States v. Ross*, 263 F.3d 844, 846 (8th Cir. 2001). *See United States v. Bily*, 406 F. Supp. 726, 728 (E.D. Pa. 1975) (defendant's statements effectuated an immediate withdrawal of consent when he said: "That's enough. I want you to stop");

Several courts have held that to be effective, a withdrawal of consent must be supported by "unambiguous acts or unequivocal statements." *Pelle*, 2006 WL 436920 at * 4; *Ross*, 263 F.3d at 846 (defendant's impatience, statements that he needed to "be on his way," and questions about the length of the search were not unequivocal withdrawal of consent); *United States v.*

*Brown*, 884 F.2d 1309, 1311-12 (9th Cir. 1989) (finding defendant's reluctance to continue search did not amount to unequivocal withdrawal of consent); *United States v. Lopez-Mendoza*, 601 F.3d 861, 867 (8th Cir. 2010) ("Conduct withdrawing consent must be an act clearly inconsistent with the apparent consent to search"). As the Court understands these decisions, they do not impose a standard beyond objective reasonableness in order to withdraw consent. Rather, the references to "unambiguous acts" and "unequivocal statements" are simply another way of articulating the objective reasonableness standard from the perspective of a reasonable law enforcement officer. As explained in *United States v. $304,980.00 in U.S. Currency*, 732 F.3d at 820:

> If a suspect's attempt to withdraw consent is equivocal, "police officers may reasonably continue their search in the premises entered pursuant to the initial grant of authority." *United States v. McMullin*, 576 F.3d 810, 815 (8th Cir. 2009). Put another way, police officers do not act unreasonably by failing to halt their search every time a consenting suspect equivocates.

*Accord United States v. Sanders*, 424 F.3d 768, 774 (8th Cir. 2005) ("If equivocal, a defendant's attempt to withdraw consent is ineffective and police may reasonably continue their search pursuant to the initial grant of authority.")

The Court now applies these principles to the facts of this case. The Court finds that Defendant Williams did not unequivocally or validly withdraw his consent to search his vehicle under the totality of the circumstances of the encounter on January 11, 2013. Williams had authorized a broad search of the vehicle and its contents pursuant to a written consent and seemed generally complacent and amicable for the vast majority of the search time. Williams obviously knew how to withdraw his consent because he made two specific objections that evening. These objections were narrowly limited to the removal of his stereo speakers and the search of his cell phones. Williams made no similar objection to the overall search of the entire

vehicle. At most, Defendant's comments about the length of the search constituted manifestations of irritation that would not have caused a reasonable officer to halt such a search. *See United States v. Gray,* 369 F.3d 1024, 1026-27 (8th Cir. 2004) (finding the defendant's protests about duration of the search and statements that it was "ridiculous" and that he was "ready to go now" were "expressions of impatience" rather than "specific requests to leave"); *Sanders*, 424 F.3d at 774 (*citing Gray*) ("protests about the length of time the search was taking without any specific request to leave did not under the circumstances amount to an unequivocal withdrawal of consent"); *Ross,* 263 F.3d at 846 (defendant's impatience, statements that he needed to "be on his way," and questions about the length of the search were not unequivocal withdrawal of consent). In sum, the Court finds that Williams did not revoke his consent to the officer to search the vehicle.

    4.  <u>Was Williams Denied the Ability to Revoke Consent?</u>

Finally, the Court rejects Defendant's argument that he was denied, prevented and/or coerced into abandoning his right to revoke his consent. To the contrary, the MVR reflects that Williams had ongoing interactions with the officers; that he was not restrained; and that he communicated in a relaxed and confident manner. Indeed, Williams testified that he got mad when he saw officers remove his stereo speakers. At that point, Williams approached his car (and became visible on the MVR) and told officers that they needed a warrant to go through his speakers. June 30 Hearing Transcript, ECF No. 65 at 18. Thus, Williams was able to effectively revoke and/or limit his consent as to the stereo speakers. Williams also specifically invoked his right to object to the search of his cell phones. Similarly, when Williams requested his coat, cell phones, cup of coffee and cigarettes from the car, the officers gave those items to him. In sum, the record reflects that Williams was not denied the ability to revoke his consent to search the

vehicle. The facts and circumstances of this case are similar to those at issue in *United States v. Braiske*, 2009 WL 5538534, at *6-7 (N.D. Iowa Dec. 23, 2009) report and recommendation adopted as modified, 2010 WL 299482 (N.D. Iowa Jan. 21, 2010) aff'd sub nom. *United States v. Mayo*, 627 F.3d 709 (8th Cir. 2010) (Defendant not deprived of opportunity to withdraw consent to search by being told to sit in the patrol car during the search); *See also United States v. Espinoza-Flores*, 303 F. App'x 434, 435 (9th Cir. 2008) (rejecting argument that Defendant was denied right to revoke consent to search even though he was handcuffed in the back of a patrol car).

The case primarily relied upon by Defendant, *United States v. McWeeney*, 454 F.3d 1030, 1033 (9th Cir. 2006), is easily distinguishable. In *McWeeney*, the Court remanded for the district court to determine whether two "young punks" who were driving a parent's car were coerced from withdrawing consent when they were told "to face forward and stop looking back" (i.e., ordered not to watch the search). In this case, Williams was a grown man, familiar with law enforcement, and the MVR demonstrates both his freedom of movement and lack of intimidation in his interactions with law enforcement agents.

Therefore, the Court finds based on the totality of circumstances as reflected in the record, that Defendant voluntarily consented to the search of his vehicle and did not withdraw his consent prior to Trooper Volk's discovery of the heroin.[8]

### 5. Cell Phone Search

In contrast to the search of his car, the Court finds that Williams did not consent to the search of his cell phones and did make an appropriate objection to such search of his cell phones. June 30 Hearing Transcript, ECF No. 65 at 17. Nevertheless, the warrantless search of

---

[8] The Court need not address the government's alternative theories.

Williams' cell phones without his consent does not warrant suppression of the evidence. Defendant relies on *Riley v. California*, 134 S. Ct. 2473, 2485 (2014), for the proposition that officers must generally secure a warrant before searching a cell phone. However, *Riley* was decided a year and a half <u>after</u> the incident in this case. Officers are not required to predict new developments in Supreme Court precedent. *See United States v. Gary*, 790 F.3d 704, 711 (7th Cir. 2015) (denying motion to suppress because officer's search of the cell phone was lawful under then-binding precedent). In *Riley*, the Supreme Court recognized that a mechanical application of its prior precedents would support the search of the cell phone. 134 S. Ct. at 2484. Moreover, *Riley* maintained that in some circumstances there might be a sufficiently strong government interest to justify a warrantless search of cell phone messages (for example, to see whether confederates of the arrestee might be headed to the scene). *Id*. at 2485-86. There was no objectively unreasonable conduct in this case for which suppression would be an appropriate remedy. Under existing law at the time, Trooper Brautigam was authorized to examine Williams' cell phones. In any event, the Court finds, as a fact, that the search of the cell phones did not aid or prolong the search for the heroin. Given all of the information that led to the agents' belief that Williams had heroin in the car and Trooper Volk's ongoing diligent efforts that evening (including his request for a drug detection dog that had not yet arrived), the Court finds that Trooper Volk would have continued his search whether or not agents found messages on the cell phones.

In summary, the MOTION FOR SUPPRESSION OF EVIDENCE (ECF No. 30), and the MOTION TO SUPPRESS EVIDENCE WITH CITATION OF AUTHORITY (ECF No. 50), will be **DENIED**.

An appropriate Order follows.


McVerry, S.J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


UNITED STATES OF AMERICA    )
           )
           )     **2:14-cr-30**
     v.        )
           )
CARLTON WILLIAMS,         )

**ORDER OF COURT**


AND NOW, this 23rd day of September, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the MOTION FOR FURTHER RULE 16 DISCLOSURE/ BRADY v. MARYLAND MATERIAL (ECF No. 29); MOTION REQUESTING RELIEF FROM INEFFECTIVE ASSISTANCE OF COUNSEL/ REQUEST FOR COURT APPOINTMENT OF COUNSEL (ECF No. 31); MOTION IN LIMINE TO COMPEL THE GOVERNMENT TO PROVIDE DEFENDANT WITH A STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE WITH CITATION TO AUTHORITY (ECF No. 37); DEFENSE COUNSEL'S MOTIONS AND RESPONSES TO MR. WILLIAMS' PRO SE MOTIONS AND TO THE GOVERNMENT'S RESPONSES THERETO (ECF No. 38); MOTION FOR DISCOVERY WITH CITATION OF AUTHORITY (ECF No. 48); MOTION TO COMPEL THE GOVERNMENT TO PROVIDE DEFENDANT WITH A STATEMENT OF UNCHARGED MISCONDUCT EVIDENCE WITH CITATION OF AUTHORITY (ECF No. 49) are hereby **DENIED**.

The MOTION FOR SUPPRESSION OF EVIDENCE (ECF No. 30); and MOTION TO SUPPRESS EVIDENCE WITH CITATION OF AUTHORITY (ECF No. 50) are hereby **DENIED**.

A pretrial conference shall be held on October 6, 2015 at 9:30 a.m.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:     All counsel of record (via CM/ECF)